THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRACY HALL<br>2206 Castle Rock Sq. #2B<br>Reston, VA 20191<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY<br>600 Fifth Street, NW<br>Washington, DC 20001<br><br>　　　　　Defendant. | Civil Action No.<br>1:19-cv-01800 (BAH) |

## AMENDED COMPLAINT

Plaintiff Tracy Hall ("Ms. Hall" or "Plaintiff"), by and through her attorneys, files this First Amended Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a challenge to Defendant's unlawful discrimination, hostile work environment, and retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 701, *et seq*. ("Rehab Act").

2. This is also a challenge to Defendant's failure to ensure that its plan administrator and or selected health care vendor complied with notice requirement for continuation coverage under Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), as applicable to Defendant under the amended provisions of the Public Health Service Act, 42 U.S.C. § 300bb-1 *et seq.*

## JURISDICTION AND VENUE

3. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

4. The United States District Court for the District of Columbia has subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

5. The Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 794a(a), as this matter involves a civil action by an aggrieved person under the Rehab Act.

6. The Court has subject-matter jurisdiction pursuant to Washington Metropolitan Area Transit Regulation Compact.  D.C. Code § 9-1107.1.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant conducts business in the District of Columbia.

8. Venue is properly laid in the District of Columbia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred the District of Columbia.

## PARTIES

9. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

10. Washington Metropolitan Area Transit Authority ("WMATA" or "Defendant") is a public transportation agency created by compact between the governments of Maryland, the District of Columbia, and the Commonwealth of Virginia.

11. On information and belief, Defendant receives funding from the federal government.

12. WMATA is an employer under the Rehab Act.

13. WMATA's principal place of business is in Washington, DC.

14. Plaintiff is a former employee of Defendant.

15. Plaintiff currently resides in Reston, VA.

## FACTUAL ALLEGATIONS

16. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

17. Ms. Hall has severe migraines.

18. Ms. Hall's migraines are a physical impairment that substantially impacts Ms. Hall's ability to think, read, concentrate and interact with others.

19. Ms. Hall's migraines are a disability under the Rehab Act.

20. Ms. Hall was hired by Defendant in or around August 6, 2007.

21. By 2017, Ms. Hall was working in Defendant's IT Apps group as a Senior Transit Applications Systems Specialist.

22. In or around 2010 or 2011, Ms. Hall notified her Defendant of her disability and requested medical leave as an accommodation for her disability under the Family Medical Leave Act.

23. Since in or around 2010 or 2011, Ms. Hall has repeatedly requested and has been granted FMLA leave as an accommodation for her disability.

**Ms. Hall's Supervisor Repeatedly Displayed Discriminatory Animus Against the Disabled**

24. In or around 2017, Ms. Hall received a new supervisor, Roseland Dewy.

25. After Ms. Dewy became Ms. Hall's supervisor, she instituted a new policy that her employees could not telework if they used more than five sick days in a six-month period.

26. Ms. Hall's coworkers called this new policy the "Tracy Rule" since Ms. Hall was the only employee who took sick leave.  Ms. Hall took the sick leave for her disability.

27. In or around June 2017, Ms. Dewy told Ms. Hall that she does not want any of her employees on FMLA.

28. On or around August 27, 2017, during a meeting about Ms. Hall's disability related absences, Ms. Dewy told Ms. Hall: "do you want to be handicap or do you want to work?" She further stated: "you need to decide if you want to be here, I have deadlines that need to be met."

29. Ms. Dewy repeatedly claimed to Ms. Hall that Ms. Hall's migraines were not real.

30. In or around December 2018, Ms. Hall complained to Defendant's Human Resources department about Ms. Dewy's conduct and disability discrimination.

31. In or around March 2018, Ms. Hall and Ms. Dewy meet with Human Resources to discuss Ms. Hall's complaints.

32. During that meeting, Ms. Dewy reiterated that she does not want to supervise anyone who takes FMLA leave.

33. In May 2018, Ms. Dewy denied Ms. Hall's requested vacation time off. Ms. Dewy stated: "well you shouldn't be taking vacation because you are on FMLA., you shouldn't even be thinking about vacation."

34. On or around November 18, 2018, former contractor Brandon Price told Ms. Hall that Ms. Dewy told him that she did not want disabled people working for her.

### Ms. Dewy Rated Ms. Hall With a Zero, Which Management Had to Reverse

35. On or around August 2018, Ms. Dewy issued Ms. Hall a negative annual review and placed Ms. Hall on a performance improvement plan ("PIP").

36. Ms. Dewey rated Ms. Hall with a zero out of nine objectives.

37. In or around September 2018, Ms. Hall grieved the issuance of a zero in her annual review, which resulted in Ms. Dewey's supervisor Robert "Dutch" Dunham revising the review to show Ms. Hall meeting four out of nine objectives.

38. Mr. Dunham therefore revised Ms. Hall's PIP to focus only on the remaining five objectives allegedly stilling needing improvement.

### Ms. Dewy Blocked Ms. Hall's Transfer

39. On or around May 21, 2018, Ms. Hall applied for the position of Scheduling System Specialist within WMATA but outside of Ms. Dewy's chain of command.

40. On or around August 27, 2018, Ms. Hall had her first interview for the Scheduling System Specialist position with a panel headed by hiring manager Billy Smith.

41. After the interview, Ms. Dewy informed the panel about Ms. Hall's negative performance review and PIP.

42. On or around October 3, 2018, Ms. Hall had a second interview for the Scheduling System Specialist position with director Jim Hamre.

43. On or around October 15, 2018, Mr. Smith advised Ms. Hall that she had been unofficially selected for the position.

44. Mr. Smith confirmed that he still wanted to hire her despite the PIP and negative annual review.

45. On or around October 29, 2018, Lora A. Wright, Assistant Manager, Talent Acquisition (Recruitment Operations), told Ms. Hall that she had been unofficially selected for the position, but needed to confer with Ms. Dewy when she would be able to release Ms. Hall to the new position.

46. On November 5, 2018, Ms. Hall inquired about the status of her official offer letter.

47. On or around November 5, 2018, Ms. Wright told Ms. Hall that she was still waiting on the release from her supervisor.

48. Despite being wanted by the hiring officials, Ms. Dewy refused to release Ms. Hall and blocked her transfer.

49. Ms. Hall, via her union, escalated the non-transfer to higher levels of management.

50. Before a decision was made on Ms. Hall's transfer, in or around mid to late November 2018, Defendant advised Ms. Hall that she would not be hired because the Scheduling System Specialist had supposedly been eliminated.

51. On November 28, 2018, Defendant terminated Ms. Hall.

52. Within days, in early December 2018, Defendant reposted the vacancy for the Scheduling System Specialist position.

53. Ms. Hall applied for the position, but she was not hired.

**Ms. Hall Met the Terms of Her PIP, But Was Nevertheless Terminated**

54. At the conclusion of the PIP, Defendant alleged that Ms. Hall had not met three out of five of her objectives.

55. Ms. Hall met all of her objectives with the exception of certain internal deadlines which Ms. Hall could not meet because of other employees or vendors failed to provide necessary information.

56. Despite meeting the terms of the PIP, Defendant terminated Ms. Hall.

**Defendant Discontinued Plaintiff's Healthcare Benefits
Without Providing a Continuation of Benefits Notice**

57. During the course of her employment, Plaintiff participated in the healthcare plan ("Plan") maintained by Defendant.

58. The Plan is an "group health plan" as defined by 42 U.S.C. § 300bb-8(1).

59. Plaintiff is a "covered employee" as defined by 42 U.S.C. § 300bb-8(2).

60. Defendant is an employer under the COBRA.

61. On information and belief, Defendant acts as the administrator of the Plan under COBRA.

62. On November 28, 2018, Defendant terminated Ms. Hall.

63. Ms. Hall's termination was a "qualifying event" under COBRA.

64. To date, Plaintiff has not received a notice of her right under COBRA to continue her healthcare benefits under the Plan.

65. As a result of Defendant's failure to provide Plaintiff with a COBRA, Plaintiff was required to pay out of pocket costs for services which would have been covered in whole or in part under the terms of the Plan if she was allowed to elect continuation coverage

## COUNT I: DISABILITY DISCRIMINATION – FAILURE TO HIRE

66. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

67. Ms. Hall has a disability.

68. Defendant is aware of Ms. Hall's disability.

69. Ms. Hall's supervisor repeatedly made derogatory comments about Ms. Hall's disability and individuals who take leave as accommodations for their disability.

70. Ms. Dewy blocked Ms. Hall's transfer to the position of Scheduling System Specialist.

71. Ms. Dewy blocked Ms. Hall's transfer because of her disability.

72. Defendant's asserted reason for Ms. Hall's non-hire, that the position was eliminated, was false.

73. After Ms. Hall was terminated, Defendant reposted the Scheduling System Specialist vacancy.

74. Ms. Hall applied for the position but was not hired.

75. Defendant did not hire Ms. Hall to the Scheduling System Specialist position because of her disability.

### COUNT II: RETALIATION – FAILURE TO HIRE

76. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

77. In March 2018, Ms. Hall and Ms. Dewy met with Human Resources personnel to discuss Ms. Hall's complaints of discrimination.

78. The March 2018 meeting was a protected activity.

79. After engaging in protected activity, Ms. Dewy blocked Ms. Hall's attempt to be transferred to the Scheduling System Specialist position.

80. Ms. Dewy blocked Ms. Hall's transfer because of her protected activity.

81. Defendant's asserted reason for Ms. Hall's non-hire, that the position was eliminated, was false.

82. After Ms. Hall was terminated, Defendant reposted the Scheduling System Specialist vacancy.

83. Ms. Hall applied for the position but was not hired.

84. Defendant did not hire Ms. Hall to the Scheduling System Specialist position because of her protected activity.

### COUNT III: DISABILITY DISCRIMINATION – TERMINATION

85. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

86. Ms. Hall has a disability.

87. Defendant is aware of Ms. Hall's disability.

88. Ms. Hall's supervisor repeatedly made derogatory comments about Ms. Hall's disability and individuals who take leave as accommodations for their disability.

89. On November 28, 2018, Defendant terminated Ms. Hall.

90. Defendant's stated reason for terminating Ms. Hall, her supposed failure to meet the terms of her PIP, was false.

91. Defendant terminated Ms. Hall because of her disability.

### COUNT IV: RETALIATION – TERMINATION

92. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

93. In March 2018, Ms. Hall and Ms. Dewy met with Human Resources personnel to discuss Ms. Hall's complaints of discrimination.

94. The March 2018 meeting was a protected activity.

95. After engaging in protected activity, Ms. Dewy placed Ms. Hall on a PIP and then terminated her for supposedly not meeting the PIP's terms.

96. Defendant's stated reason for terminating Ms. Hall, her supposed failure to meet the terms of her PIP, was false.

97. Defendant terminated Ms. Hall because of her protected activity.

### COUNT V: DISABILITY DISCRIMINATION - HOSTILE WORK ENVIRONMENT

98. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

99. Ms. Hall has a disability.

100.   Defendant is aware of Ms. Hall's disability.

101.   Ms. Hall's supervisor repeatedly made derogatory comments about Ms. Hall's disability and individuals who take leave as accommodations for their disability.

102. On or around August 2018, Ms. Dewy issued Ms. Hall a negative annual review and placed Ms. Hall on a PIP.

103. Ms. Dewy's discriminatory conduct, including her derogatory comments, negative review, and issuance of a PIP, were severe or pervasive to alter Ms. Hall's terms and conditions of employment.

104. Defendant was aware of Ms. Dewy's hostile work environment but did not take corrective measures to stop it.

105. Ms. Dewy subjected Ms. Hall to a hostile work environment because of her disability in violation of the Rehab Act.

## **COUNT VI: RETALIATION - HOSTILE WORK ENVIRONMENT**

106. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

107. Ms. Hall engaged in protected activity via complaints to Human Resources and her use of leave as an accommodation for her disability.

108. Ms. Hall's supervisor repeatedly made derogatory comments about Ms. Hall's disability and individuals who take leave as accommodations for their disability.

109. On or around August 2018, Ms. Dewy issued Ms. Hall a negative annual review and placed Ms. Hall on a PIP.

110. Ms. Dewy's retaliatory conduct, including her derogatory comments, negative review, and issuance of a PIP, were severe or pervasive to alter Ms. Hall's terms and conditions of employment.

111. Defendant was aware of Ms. Dewy's hostile work environment but did not take corrective measures to stop it.

112. Ms. Dewy subjected Ms. Hall to a hostile work environment because of her protected activities in violation of the Rehab Act.

## COUNT VII: FAILURE TO PROVIDE COBRA NOTICE

113. All prior paragraphs are incorporated by reference, as if fully set forth herein.

114. On November 28, 2018, Defendant terminated Ms. Hall.

115. Ms. Hall's termination was a "qualifying event" under COBRA.

116. To date, Plaintiff has not received a COBRA notice of her right to continue her healthcare benefits under the Plan.

117. As a result of Defendant's failure to provide Plaintiff with a COBRA continuation notice, Plaintiff was required to pay out of pocket costs for services which would have been covered in whole or in part under the terms of the Plan if she was allowed to elect continuation coverage.

118. The Public Service Health Act provides Ms. Hall with a private right of action for Defendant's failure to provide her with a notice of continuation of benefits.  42 U.S.C. § 300bb-7.

119. Plaintiff has been forced to and will continue to expend attorney's fees in pursuit of this claim.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Plaintiff and against Defendant;

B. Reinstatement, or front pay in lieu of reinstatement;

C. Back pay;

D. Compensatory damages;

E.  Attorneys' fees and costs;

F.  Appropriate equitable relief pursuant to 42 U.S.C. § 300bb-7, including surcharge, as defined by the Supreme Court in *CIGNA v. Amara*, 563.U.S. 461 (2011);

G.  Punitive damages, and

H.  Other such relief as may be appropriate to effectuate the purposes of the Rehab Act.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: January 6, 2020

          Respectfully submitted,

          /s/ Jeremy Greenberg
          Jeremy Greenberg (1024226)
          Denise M. Clark (420480)
          Clark Law Group, PLLC
          1100 Connecticut Ave, N.W.,
          Suite 920
          Washington, D.C. 20036
          (202) 293-0015
          jgreenberg@benefitcounsel.com
          dmclark@benefitcounsel.com
          *Counsel for Plaintiff*