IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRACY HALL** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Case No. 1:19-cv-01800 (BAH) |
| | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to *Fed. R. Civ. P. 56* and the entire record of the case, Defendant, Washington Metropolitan Area Transit Authority (WMATA), moves this Court for summary judgment. In support of this motion, Defendant submits its Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute, Exhibits and proposed Order.

Plaintiff's Amended Complaint [Dkt. 13] alleges that WMATA violated the Rehabilitation Act of 1973 by (1) discriminating against Plaintiff solely because of her disability ("Count I") and/or (2) retaliating against Plaintiff ("Count II") by not selecting Plaintiff for the Bus Scheduling System Specialist position; by (3) discriminating against Plaintiff solely because of her disability ("Count III") and/or (4) retaliating against Plaintiff ("Count IV") for terminating her; by (5) creating a hostile work environment because of her disability ("Count V"); by (6) creating a retaliatory hostile work environment because of her alleged protected activity ("Count VI"); and (7), Plaintiff alleges that WMATA failed to provide her notice under The Consolidated Omnibus Budget Reconciliation Act ("COBRA"). 42 U.S.C. §300bb-7 (2020).

WMATA is entitled to summary judgment in its favor on Counts I and III asserting

disability discrimination because Plaintiff cannot show that her non-selection for the Bus Scheduling System Specialist position and/or her termination was solely because of her disability.

WMATA is entitled to summary judgment on Counts II and IV because Plaintiff cannot show that her non-selection for the Bus Scheduling System Specialist position and/or her termination was because of her alleged protected activity. Specifically, Plaintiff cannot show causation due to the significant time gap between her alleged protected activity and her non-selection and/or termination. Besides, WMATA does have non-retaliatory reasons for not selecting Plaintiff for the position and the termination of her employment, namely her poor job performance.

WMATA is entitled to summary judgment on Counts V and VI because there is no evidence that Plaintiff was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

Finally, WMATA is entitled to summary judgment on Count VII because WMATA is a state agency of Maryland, Virginia and the District of Columbia; therefore, WMATA enjoys 11th Amendment immunity from Plaintiff's private cause of action for monetary damages and equitable relief under COBRA and there is no evidence that WMATA waive its sovereign immunity.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1468


## CERTIFICATE OF SERVICE

I certify that, on this 24th day of March 2020, a copy of the foregoing Defendant's Motion for Summary Judgment, supporting Memorandum of Law and Points and Authorities, Statement of Material Facts Not in Dispute, Exhibits and proposed Order was electronically transmitted to:

Denise M. Clark
Jeremy Greenberg
Clark Law Group, PLLC
1100 Connecticut Avenue, N.W.,
Suite 920
Washington, D.C. 20036

Counsel for Plaintiff


*/s/ Michael K. Guss*
Michael K. Guss

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRACY HALL | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Case No. 1:19-cv-01800 (BAH) |
| | : |
| | : |
| WASHINGTON METROPOLITAN | : |
| AREA TRANSIT AUTHORITY | : |
| | : |
| **Defendant.** | : |
| _____ | : |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

**<u>Statement of Facts</u>**

Plaintiff Tracy Hall ("Plaintiff") is a former employee in WMATA's Information Technology ("IT") Department. (S.M.F. ¶ 1). Plaintiff started work with WMATA on August 6, 2007. (S.M.F. ¶ 1). Throughout her entire tenure at WMATA, Plaintiff's bargaining unit was The Office and Professional Employees International Union Local No. 2, AFL-CIO ("Local 2"). (S.M.F. ¶ 2). Plaintiff is a person with a disability— she suffers from chronic migraines. (S.M.F. ¶ 3).

On July 27, 2012, WMATA offered Plaintiff a work accommodation that included, among other allowances, modification of her working hours on days she had afternoon medical appointments and an enclosed workspace in a fragrance-free environment with special lightening. (S.M.F. ¶ 4). On April 3, 2013, Plaintiff received a written warning for attendance and performance issues from her former supervisor. (S.M.F. ¶ 5).

On or about April 2017, Rosalind Dewey ("Dewey"), Manager of IT Applications and Development, became Plaintiff's direct supervisor. (S.M.F. ¶ 6). On August 9, 2017, Dewey issued Plaintiff a written warning for "excessive absences." (S.M.F. ¶ 7). Plaintiff and Local 2 would later grieve the August 9 Excessive Absences Memorandum, but Dewey denied the grievance at the Step One level on September 22, 2017. (S.M.F. ¶ 9).

On September 19, 2017, another IT manager emailed Dewey stating that one of Plaintiff's co-workers complained of food odors coming from Plaintiff's workspace. (S.M.F. ¶ 8). After an investigation was conducted, Dewey issued Plaintiff a Warning Notice for Multiple Safety Violations on October 10, 2017. (S.M.F. ¶ 10). Local 2 decided not to pursue a grievance of Dewey's October 10, 2017 written warning. (S.M.F. ¶ 11).

In her deposition, Plaintiff testified that Dewey made a statement on or about May 2017 that "she didn't want handicapped people working for her." (Hall Dep. 18:8-20-5, Jan. 7, 2020). Plaintiff testified that Dewey made an identical statement again shortly before giving Plaintiff the Excessive Absences Written Warning on August 9, 2017. (Hall Dep. 24:9-28:12). However, it is unclear if Dewey referenced "handicapped persons," Plaintiff's disability, or Plaintiff's use of sick leave in that second statement. (Hall Dep. 26:22-28-1). Plaintiff further testified that Dewey referenced Plaintiff being "sick" in a third meeting with a Local 2 official. (Hall Dep. 28:19-29:10). Plaintiff testified that Dewey would use the term "handicapped" in private one-on-one meetings with Plaintiff but refer to Plaintiff's "sick leave" in meetings involving herself, Plaintiff and others. (Hall Dep. 32:10-33:21). Plaintiff stated that Dewey stopped using the term "handicapped" and instead started saying "leave" or "sick" after an October 2017 meeting with WMATA Office of Employee Relations employee Michelle Chapman ("Chapman"). (Hall Dep. 35:16-37:8).

5

Plaintiff testified that in November 2017, Dewey yelled at her and made her cry. (Hall Dep. 70:20-71:10). She testified that Dewey "yelled at [her] frequently" at work. (Hall Dep. 71:22-72:11). Plaintiff also testified that Dewey allegedly ordered a co-worker to remove her access to a program to imply that Plaintiff did not know what she was doing. (Hall Dep. 72:19-73:10). On November 21, 2017, Plaintiff sent Chapman and Brenda Creavalle ("Creavalle") an email requesting mediation. (S.M.F. ¶ 12). Specifically, in her email, Plaintiff wrote the following:

> I am requesting that we please have mediation between myself and Roz. I am constantly feeling as if I am being degraded [sic] talked to in a disrespectful manner. I have attempted on numerous occasions to talk to her and let her know how intimidating this is to me and it only appears to get worse.

[Dkt. 15-11] (Nov. 21, 2017 Email from Plaintiff to Chapman & Creavalle).

The email resulted in mediation between Plaintiff, Dewey, and Creavalle on or about March 2018 ("March 2018 mediation") to discuss Plaintiff's allegations of a hostile work environment. (Hall Dep. 63:11-66:14). Plaintiff testified that a "consensus" was reached after the March 2018 mediation. (Hall Dep. 70:1-9). It is unclear if the following examples were discussed in the March 2018 mediation, but other examples of an alleged hostile work environment Plaintiff gave in her deposition were: (1) denial of telework (Hall Dep. 42:8-17); (2) denial of off-site training for entering her time, although Plaintiff was able to learn how to enter her time in her office (Hall Dep. 46:3-48:21); removal from the Family Assistance Team, which was a voluntary team that assisted passengers during a catastrophic emergency (Hall Dep. 49-50:15); and she was prevented from volunteering to assist passengers as part of the WMATA MIP program. (Hall Dep. 50:21-51:10). It should be noted that the MIP program was not a normal course of Plaintiff's job duties and, like the Family Assistance Team, was at her manager's discretion. (Hall Dep.

51:21-52:1). Plaintiff also added that she was not allowed to take a sign language class, which was also not part of her job duties. (Hall Dep. 52:2-11).

On February 6, 2018, about a month before the March 2018 mediation, Dewey issued a mid-year report that addressed Plaintiff's poor job performance and behavioral concerns for the fiscal year 2017-2018. (S.M.F. ¶ 13). On or about May 2018, Plaintiff applied for the Bus Scheduling System Specialist position. (S.M.F. ¶ 14). On August 8, 2018, Ming Chao, Plaintiff's second-level supervisor, signed Plaintiff's 2018 End-Of-Year ("2018 EOY") evaluation showing Plaintiff completing less than 70% of her objectives for the 2017-2018 fiscal year. (S.M.F. ¶ 15).

On August 14, 2018, Plaintiff is placed on a Performance Improvement Plan ("PIP") (S.M.F. ¶ 16). Plaintiff and her union, Local 2, grieve her 2018 EOY evaluation and placement on a PIP, which is denied at the Step Two level by WMATA supervisor Robert "Dutch" Dunham in a detailed summary. (S.M.F. ¶¶ 18-20). On November 6, 2018, Dewey, in a detailed memorandum to Creavalle in WMATA's Employee Relations Office, explains her reasons for Plaintiff's eventual termination. (S.M.F. ¶ 21). On November 19, 2018, Plaintiff's pending application for the Bus Scheduling System Specialist position is withdrawn due to Plaintiff's poor performance record in the IT Department. (S.M.F. ¶ 22). In a letter to Plaintiff dated November 28, 2018, Plaintiff is terminated citing her poor job performance and previous disciplinary record. (S.M.F. ¶).

<b><u>Argument</u></b>

**I. WMATA's Eleventh Amendment Immunity Bars Plaintiff's Failure to Provide Notice Claim under COBRA**

Plaintiff's Count VII allegation that WMATA failed to provide her notice under COBRA must be dismissed because WMATA enjoys Eleventh Amendment sovereign immunity from such

a claim.

WMATA enjoys the Eleventh Amendment immunity of both Maryland and Virginia as the two state signatories to the WMATA Compact. *Morris v. WMATA*, 781 F2d. 218, 219 (D.C. Cir. 1986); *Buck v. WMATA*, No. 17-632, 2019 WL 6617853, at 4, (D.D.C. Dec. 5, 2019). The Supreme Court has consistently held that the Eleventh Amendment bars suits against a State and a State agency by its own citizens, as well as by citizens of another State without the State's consent. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004). The sovereign immunity of the States under the Eleventh Amendment is not absolute and is subject to two exceptions, none of which apply in this case. *Buck* at *4. The first exception is when Congress, in exercising its power under § 5 of the Fourteenth Amendment, explicitly abrogates the Eleventh Amendment immunity of the States and the second exception is that a state may waive its immunity and consent to suit. *Id*. at *4.

Congress enacted COBRA under its Article I power to regulate interstate commerce. See U.S. CONGRESSIONAL RESEARCH SERVICE, *Health Care: Constitutional Rights and Legislative Powers* (R40846; July 9, 2012), by Kathleen S. Swendiman, at 9, available at http://fas.org/sgp/crs/misc/R40846.pdf . Therefore, when Congress enacted COBRA, it did not abrogate the sovereign immunity of the States under the only valid exercise of Congressional power allowed— §5 of the Fourteenth Amendment. Therefore, WMATA's sovereign immunity applies.

In addition, WMATA has not waived its sovereign immunity from suits under COBRA. The test for determining whether a State waived its immunity from federal court jurisdiction is stringent. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 231 (1985); *Buck* at *5. Courts will find a waiver either if the State voluntarily invokes the federal court's jurisdiction or makes a

clear declaration of its intent to submit to federal court jurisdiction. *Coll. Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999); *Buck* at *5.  A court may find waiver when a "suability provision", which the WMATA Compact does not have, is attached to Congress' approval of a multistate commission created by interstate compact. *Id*.

Finally, Congress may use its spending power to elicit a clear declaration that a state will submit itself to federal court jurisdiction as a condition for a grant of federal funds. *Coll. Savings Bank*, 527 U.S. at 686, *Buck* at *5. However, Congress must exercise its spending power explicitly meaning a congressional waiver provision is only constitutional if it manifests "a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Barbour*, 374 F.3d at 1163 (quoting *Atascadero*, 473 U.S. at 247).

WMATA contracted with CIGNA and AETNA to provide medical insurance for Local 2 represented employees. WMATA did not waive its immunity from COBRA lawsuits in any of those agreements. In addition, there is no allegation by Plaintiff that Congress has used its spending power to force WMATA to waive its immunity from suits under COBRA. Therefore, Plaintiff's allegations in Count VII must be dismissed.

## II. Plaintiff's Allegations of Disability Discrimination under the Rehabilitation Act in Counts I and III Must Be Dismissed

Count I of Plaintiff's Amended Complaint alleges that WMATA violated the Rehabilitation Act when it failed to select Plaintiff for the Bus Scheduling System Specialist position. Count III of Plaintiff's Amended Complaint alleges that WMATA violated the Rehabilitation Act when it terminated her for poor job performance. Both counts should be dismissed because Plaintiff cannot show that her non-selection for the position and/or her

termination was solely based on her disability.

To sustain a claim of discrimination under the Rehabilitation Act, Plaintiff must show that she suffered an adverse employment action based solely on her disability. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The causation standard under the Rehabilitation Act for both intentional discrimination and retaliation is the traditional "but-for" causation standard. *Drasek v. Burwell*, F.Supp.3d 143, 154 (D.D.C. 2015). Under the "but-for" causation standard, Plaintiff's disability must be the reason that the employer decided to act. *Id*.

Plaintiff is a person with a disability. She suffers from chronic migraines and it was known by WMATA as early as 2012 when she was granted an accommodation for her condition. Plaintiff was not selected for the Bus Scheduling System Specialist position because of her documented poor job performance, not her disability. [Dkt. 15-17] (S.M.F. ¶ 22). In an email, Dunham confirms that James Hamre, the hiring official for the Bus Scheduling System Specialist position, did not want to hire Plaintiff because of her poor performance record. [Dkt. 15-17] (S.M.F. ¶ 22).

Plaintiff had a history of poor job performance going all the way back to April of 2013. [Dkt. 15-4] (S.M.F. ¶ 5). Dewey drafted an exhaustive negative mid-year review of Plaintiff's job performance on February 6, 2018 a month before Plaintiff's March 2018 mediation with Dewey, Plaintiff, and Creavalle from WMATA's Employee Relations. [Dkt. 15-12] (S.M.F. ¶ 12). Plaintiff's 2018 EOY evaluation, which was grieved and largely upheld, reflected Plaintiff's poor job performance in specific detail. [Dkt. 15-12] (S.M.F. ¶ 15). Plaintiff's negative 2018 EOY necessitated a PIP on August 14, 2018, which was ongoing when she became a finalist for the position in WMATA's Bus Division. [Dkt. 15-13] (S.M.F. ¶ 18). Dewey's well justified decision to terminate Plaintiff's employment was submitted to WMATA's human resource's department

on November 6, 2018. [Dkt. 15-16] (S.M.F. ¶ 21). Plaintiff's disability is not referenced as a reason for her non-selection to the Bus position nor her well justified termination from WMATA. Plaintiff's well-documented poor job performance is a nondiscriminatory reason for her non-selection to the Bus Scheduling Specialist position and her termination without any evidence of pretext; therefore, Plaintiff's allegations of disability discrimination in Counts I and III must be dismissed.

### III. Plaintiff's Allegations of Retaliation Under the Rehabilitation Act in Counts II and IV Must Be Dismissed

Count II of Plaintiff's Amended Complaint alleges that WMATA engaged in retaliation under the Rehabilitation Act when she was not selected for the Bus Scheduling Specialist position. Count IV of Plaintiff's Amended Complaint alleges the WMATA engaged in retaliation under the Rehabilitation Act when it terminated Plaintiff's employment. Both counts of retaliation must be dismissed because Plaintiff cannot prove a causal connection between her alleged protected activity and either her non-selection for the position and/or her termination.

To prove retaliation under the Rehabilitation Act, Plaintiff must show that she suffered a materially adverse action because she had brought or threatened to bring a discrimination claim under the Rehabilitation Act. *Baloch* at 1198. A materially adverse action is an action that would dissuade a reasonable employee from making or supporting a charge of discrimination. *Id*. Importantly, there must be a causal connection between the materially adverse action and the protected activity. *Drasek* at 162. To prove a causal connection, Plaintiff must show that the materially adverse action would not have occurred but for the protected activity. *Id*. While temporal proximity can support an inference of causation in a case of retaliation, the two events must be very close in time. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

11

Conversely, while there is no bright-line rule, the Supreme Court has cited circuit decisions suggesting that in some instances, a three-month period between the alleged protected activity and the adverse employment action, standing alone, may be too lengthy to infer causation. *Id*. at 1357-58.

    Plaintiff's allegations in Count III that her non-selection for the Bus Scheduling Specialist position was retaliation under the Act fails because she cannot overcome WMATA's non-retaliatory reason for not selecting her for the position— namely her well documented poor job performance. More importantly, Plaintiff cannot prove causation considering there was an eight-month gap between her alleged protected activity, the March 2018 mediation, and her non-selection for the position on or about November 2018.[1] As detailed above, Plaintiff's poor job performance was well documented in her mid-year performance review on February 6, 2018, in her 2018 EOY evaluation on August 8, 2018, and when she was placed on a PIP on August 14, 2018. Plaintiff offers no evidence that Jim Hamre's decision not to hire Plaintiff for the position in Bus was because of her prior protected activity in March. In fact, there is no evidence that Mr. Hamre even knew about Plaintiff's prior protected activity. Even if Plaintiff argued that Dewey knew of Plaintiff's prior protected activity because of her participation in the March 2018 mediation and that telling Mr. Hamre that Plaintiff was on a PIP influenced his decision, the eight-month gap between the mediation and her non-selection is too large of a gap of time for a

---

[1] Plaintiff asserts in her answer to WMATA's written Interrogatories (Pl.'s Resp. to Def.'s Interrog. #6.) that her and her union's August 2018 grievance of her 2018 EOY evaluation and placement on a PIP was also protected activity; however, there is no mention in either the Step One decision by Dewey [Dkt. 15-14] or Step Two decision by Dunham [Dkt. 15-15] that Plaintiff complained of being discriminated or retaliated because of her disability. Union grievances and general complaints of unfair treatment do not constitute protected activity. *Robbins v. District of Columbia*, 67 F.Supp.3d 141, 146 (D.D.C. 2014); see also *Ramey v. PEPCO*, 468 F.Supp.2d 51, 59 (D.D.C. 2009) (a union grievance that doesn't allege "discrimination" or another unlawful practice under Title VII is not "statutorily protected activity.")

jury to infer causation. Therefore, Count II of Plaintiff's Amended Complaint must be dismissed.

Plaintiff's claim that her termination was retaliation under the Rehabilitation Act fares no better. Again, Plaintiff's poor job performance is well documented. She was placed on a PIP on August 14, 2018. In a well-documented memorandum to WMATA HR, Dewey justified her reasons for moving forward with Plaintiff's termination due to her failure to improve her performance. [Dkt. 15-16] (S.M.F. ¶ 21). Like Plaintiff's non-selection allegation, the eight-month gap between the March 2018 mediation and the decision to terminate her on November 6, 2018 is too large a gap for a jury to infer causation. Therefore, Count IV of Plaintiff's Amended Complaint must also be dismissed.

### IV. Plaintiff's Allegations of An Hostile Work Environment (Count V) and Retaliatory Hostile Work Environment (Count VI) Must Be Dismissed

In Count V, Plaintiff alleges that Dewey created an actionable hostile work environment under the Rehabilitation Act. Count VII adds an allegation of a retaliatory hostile work environment. Either theory fails because Plaintiff cannot show that Dewey subjected Plaintiff to discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive that it altered the conditions of Plaintiff's employment.

Typically, a hostile work environment claim consists of several individual acts not actionable on their own but may be actionable due to their "cumulative effect." *Aldrich v. Burwell*, 197 F.Supp.3d 124, 135 (D.D.C. 2016) (quoting *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). To succeed on her claims, Plaintiff must show that she was subjected to "discriminatory intimidation, ridicule and insult" by her employer that is "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Aldrich* at 136 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)). The Court must look

"at all the circumstances, including the frequency of the [alleged] discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id*. (citing *Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007)).

A hostile work environment can be established with one severe episode or a series of connected incidents that are "sufficiently continuous and concerted to be considered pervasive." *Id*. at 136 (quoting *Brennan v. Metro. Opera Ass'n. Inc*., 192 F.3d 310, 318 (2d. Cir. 1999)). However, vague, conclusory statements and workplace reprimands that are well within the bounds of the "ordinary tribulations of the workplace" is not considered severe or offensive conduct of the type that would create an objectively abusive work environment. *Id*. at 138 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

Like the plaintiff in *Aldrich*, the timeline of most of Plaintiff's allegations of a hostile work environment are unclear. While the chronology for Plaintiff's general hostile work environment claim made in Count V may run the entire length of the timeline, the retaliation chronology alleged in Count IV can only start on the day Plaintiff engaged in alleged protected activity, which is the day of March 2018 mediation and thereafter. However, Plaintiff's allegations still fail and deserve dismissal.

Plaintiff's discriminatory hostile work environment claim rest on a single incident—Plaintiff's allegation that Dewey yelled at her and made her cry in November 2017, which she alleges made her too nervous to enter the building. [Dkt. # 15-19] (Pl.'s Resp. to Def.'s Interrog. #8.), (Hall Dep. 70:20-71:10).

Her retaliatory hostile work environment claim rest on the following incidents, although she does not give a date for when each incident occurred:

- Denial of telework (Hall Dep. 42:8-17);

- Denial of off-site training for recording her time, although Plaintiff was able to learn how to enter her time in her office (Hall Dep. 46:3-48:21), (Pl.'s Resp. to Def.'s Interrog. #7.);

- Removal from the Family Assistance Team (Hall Dep. 49-50:15), (Pl.'s Resp. to Def.'s Interrog. #7.)

- Not being approved to volunteer for the WMATA MIP program (Hall Dep. 50:21-51:10); (Pl.'s Resp. to Def.'s Interrog. #7.)

- Not being approved to take a sign language class, which was not a part of her job duties (Hall Dep. 52:2-11).

- Plaintiff also testified that Dewey yelled at her often. (Hall Dep. 71:22-72:11).

None of the above alleged incidences alone or taken together, including the November 2017 incident, meets "the demanding standards" for an actionable hostile work environment. See *Franklin v. Porter*, 600 F.Supp.2d 38, 76 (D.D.C. 2009) (quoting *Sewell v. Chao*, 532 F.Supp.2d 126, 141-42 (D.D.C. 2008)) First, the above-mentioned incidents are typical workplace tribulations, especially considering that some of Plaintiff's allegations are over activities unrelated to her job duties. Plaintiff's allegation that Dewey often yelled at her is vague and conclusory. Discrimination statutes like the Rehabilitation Act are not "general civility codes" and the fact that Dewey yelled at Plaintiff about something that was work-related does not equate to an actionable hostile work environment. See *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "Not everything that makes an employee unhappy is an actionable adverse action." *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006). Therefore, Plaintiff's allegations of a hostile work environment in Counts V and VI must be dismissed.

**Conclusion**

Therefore, because all of Plaintiff's allegations in her Amended Complaint are unsupported by evidence and the law, WMATA is entitled to summary judgment as a matter of law.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1468

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TRACY HALL** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Case No. 1:19-cv-01800 (BAH) |
| | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

## **ORDER**

UPON CONSIDERATION of Defendant WMATA's Motion for Summary Judgment, and the entire record of the case, it is this _____ day of _____, 2020; ORDERED, that the motion is GRANTED, and the case is dismissed with prejudice for the reasons stated in the Defendant's motion and supporting memoranda of points and authorities.

This is a Final Order

_____
United States District Court Judge

Copies to:

Michael K. Guss
Senior Counsel
WMATA-COUN
600 Fifth Street, NW
Washington, D.C. 20001

Denise M. Clark
Clark Law Group, PLLC
1100 Connecticut Avenue, N.W.,
Suite 920
Washington, D.C. 20036